**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BETH MCDANIEL,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:10-cv-699

Beckwith, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Beth McDaniel filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 31, 2007, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of February 5, 1989, due to liver problems, hepatitis and knee problems. (Tr. 113-18, 133). She was born in 1966 and 41 years old at the time she filed her applications for DIB and SSI. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). (Tr. 70-78). On September 30, 2008, Plaintiff, who was represented by counsel, appeared and

1

testified at a hearing before ALJ Deborah Smith. (Tr. 22-50). A vocational expert (VE), William T. Cody, also appeared and testified at the hearing.

On April 8, 2010, the ALJ entered her decision denying Plaintiff's DIB and SSI applications. (Tr. 12-17). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since February 5, 1989, the alleged onset date (20 CFR 404.1571 *et seq.* and 20 CFR 416.971 *et seq.*)

   ……………………..

3. There are no medical signs or laboratory to substantiate the existence of a medically determinable impairment that is severe, as defined in the Regulations (whether her impairments are considered singly or in combination) (20 CFR 404.1520(c) and 416.920(c)).

   ……………………..

4. The claimant has not been under a disability as defined in the Social Security Act, from February 5, 1989, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(Tr. 14-17). Thus, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and therefore not entitled to DIB or SSI.[1]

---

[1] The relevant period of time at issue concerns Plaintiff's work abilities and limitations between February 5, 1989 through September 30, 2006. To establish her claim for disability benefits, Plaintiff was required to establish that she was disabled on or before September 30, 2006, the date her insured status expired for purposes of Disability Insurance Benefits. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). While Plaintiff was not required to prove she was disabled for a full twelve months *prior* to the expiration of her insured status, she was required to prove "the onset of disability" prior to the expiration of her insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary,* 678 F.2d 653, 654 (6th

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

---

Cir. 1982); 42 U.S.C. § 423(d)(1)(A).

3

> from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to consider the combined impact of her impairments in determining that she did not suffer

4

from severe medical impairment; and 2) failing to adequately consider her pain and credibility. The Commissioner, however, contends that Plaintiff has failed to carry her burden in establishing that she suffered from a severe medical impairment during the relevant period. The Commissioner further asserts that the ALJ properly considered Plaintiff's credibility and complaints of disabling pain in accordance with agency regulations. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error should be overruled.

   1. *Step-two analysis*

Plaintiff's first assignment of error alleges that the ALJ prematurely terminated the five-step process at step two after determining that Plaintiff did not suffer from a "severe" impairment. As noted above, at step two of the sequential benefits analysis, a plaintiff seeking disability benefits must demonstrate that he or she suffers from a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). In the mental context, this means a significant limitation upon a plaintiff's ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R §§ 404.1521(b)(3)-(b)(6), 416.921(b)(3)-(b)(6).

Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and

hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984).

The Sixth Circuit has characterized step two of the disability determination process as a "*de minimis* hurdle." See *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Nevertheless, a claim may be dismissed at step two if it is determined that the claim is "'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 n. 1 (6th Cir.1985)). Although the burden of proving that an impairment is "severe" is a relatively light one, it rests with the plaintiff, not with the Commissioner. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997). Thus, to surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled," as defined by the Act, on or prior to the date that the applicant was last insured. *Despins v. Commissioner of Social Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (citations omitted).

In the present case, ALJ's conclusion that Plaintiff did not suffer from a "severe" impairment as defined in 20 C.F.R. § 404.1520(c) is substantially supported. As explained below, the evidence of record simply does not establish that Plaintiff suffers from an impairment or combination of impairments that significantly limits her ability to do basic work activity.

Plaintiff testified that her back problems began after a motor vehicle accident in 1989. (Tr. 33). However, the earliest medical records submitted in support of Plaintiff's disability applications are from 1996. In May 1996, Plaintiff was diagnosed with a right shoulder strain and lumbosacral back strain after a lifting injury on the job. (Tr. 327). However, x-rays of Plaintiff's right shoulder were normal. No x-rays were taken of Plaintiff's back. She was prescribed physical therapy and pain medication, and was instructed to return to work in two days. (Tr. 326-327).

The record does not contain any additional medical evidence until December 2006, more than ten years after she was injured at work. At that time, Plaintiff was taken to the emergency room by ambulance due to tremors and mental confusion. Alcohol withdrawal was suspected after Plaintiff reported an alcohol intake of 2-6 beer per day, as well as rum and coke. (Tr. 205). Plaintiff also complained of leg pain, abdominal pain, skin discoloration and weight loss and was admitted to the hospital. (Tr. 202). Plaintiff reported that she had "some type of hepatitis" and was evaluated by a gastroenterologist. (Tr. 206-07). However subsequent testing ruled out Hepatitis C. (Tr. 218). During this hospitalization, Plaintiff also underwent a psychiatric consultation for her "depression with alcoholism" and it was recommended that she start Zoloft. Plaintiff was ultimately diagnosed with chronic liver disease secondary to alcoholism, anemia, and depression. (Tr. 202). Upon discharge, Plaintiff was prescribed Librium, Zoloft, Thiamine and Protonix. She was also advised to stop drinking alcohol. (Tr. 202). The record does not contain any additional evidence relating to Plaintiff's liver problems.

In November 2007, Plaintiff was seen in the emergency room complaining of knee pain. (Tr. 226). Plaintiff brought a prior x-ray of her knee which was read as

7

showing degenerative changes. (Tr. 226). However, all examination findings were normal and Plaintiff declined additional x-rays. (Tr. 228). The record contains no additional information relating to Plaintiff's left knee impairment.

The record also includes treatment notes from three emergency room visits in June, July and August 2008, whereupon Plaintiff was treated for dental problems and injuries related to an alleged sexual assault. (Tr. 245-255). Plaintiff suffered from severe dental decay and the treatment notes indicate that she was advised to follow-up with a dentist. (Tr. 248). Treatment notes also reveal that she suffered minor injuries, *i.e.* a neck strain and bruised left foot, due to the alleged assault. (Tr. 251). She was prescribed pain medication and discharged. *Id.*

In June 2008, Dr. Cindy Matyi, a state agency psychologist, reviewed Plaintiff's medical history and completed a Psychiatric Review Technique Form. (Tr. 230-42). Dr. Matyi determined that there was insufficient evidence in the record to establish that Plaintiff suffered from any mental impairments. (Tr. 230-42).

In August 2008, Dr. Paul Heban, a state agency physician, also reviewed Plaintiff's medical record and provided a "Case Analysis." (Tr. 256). Dr. Heban noted that Plaintiff's physical examination performed on November 25, 2007 resulted in normal findings. Dr. Heban further indicated that there was no additional information in the file, as Plaintiff had not cooperated with requests for additional information. (Tr. 256).

Plaintiff also received chiropractic care in 2009 for neck and back pain. (Tr. 268-318). In February 2009, Dr. Thompson, Plaintiff's treating chiropractor, noted upper back and neck pain aggravated by activities of daily living. (Tr. 306). Dr. Thompson diagnoses included, neck sprain/strain, sprain or other specified sites of shoulder;

8

brachial neuritis or radiculitis NOS; closed dislocation, fifth cervical vertebra; and muscle spasms. (Tr. 317). Dr. Thompson indicated that Plaintiff's initial chiropractic treatment showed increased range of motion and decreased pain. (317-18).

Plaintiff alleges that the ALJ erred in finding that she did not suffer from a severe medical impairment because the record indicates that she suffers from a host of impairments, including liver disease, depression, left knee pain, neck sprain/strain, shoulder sprain, brachial neuritis, radiculitis, and muscle spasms. The mere existence of those impairments, however, does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins,* 257 F. App'x at 930 (citing *Higgs*, 880 F.2d at 863). When the record does not contain any reports, doctor statement's or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (citing *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988); *Maloney v. Apfel*, No. 99-3081, 2000 WL 420700 (6th Cir. Apr. 14, 2000); *Foster v. Sec'y of Health & Human Servs.*, No. 88-1644, 1990 WL 41835 (6th Cir. Apr. 11, 1990)).

The record in this case is devoid of any indication that Plaintiff's health problems result in any specific work-impairing limitations. As correctly found by the ALJ, despite Plaintiffs' complaints of back pain, the objective medical evidence reveals normal findings. Similarly, Plaintiff testified that she had torn cartilage and ligaments in her left knee, however, there is no medical evidence establishing a knee impairment. The record contains only one reference to Plaintiff's alleged knee impairment, a November 2007 emergency room report wherein Plaintiff complained of left knee pain. (Tr. 226).

9

Upon examination, however, Plaintiff had full range of motion, ligamentous stress testing was negative, and anterior and posterior drawer sign testing was negative. (Tr. 228). In other words, the examination revealed normal findings. Furthermore, although Plaintiff was diagnosed with chronic liver disease secondary to alcoholism in December 2006, the record does not contain any additional evaluation or treatment for liver disease. Notably, Plaintiff testified that she has never received any treatment for Hepatitis C.[2] (Tr. 16).

Additionally, Plaintiff's contention that the ALJ failed to consider the combined effect of her impairments is not well-taken. The ALJ's decision expressly states that Plaintiff's impairments "whether . . . considered singly or in combination" were not severe, as defined by the agency's regulations. (Tr. 14). As detailed above, the ALJ thoroughly reviewed and analyzed the medical evidence of record, and properly determined that the record did not support a finding that Plaintiff suffered from a severe medical impairment. (Tr. 14). Notably, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Simons v. Barnhart*, 114 F. App'x 727, 734 (6th Cir. 2004) (citations omitted).

In sum, the record indicates that Plaintiff has suffered from various medical issues during the relevant period. Notably, the medical evidence consists primarily of treatment notes from Plaintiff's several visits to the emergency room for various

---

[2] Plaintiff testified that she had no way to pay for medical care, and argues in her Statement of Errors that her lack of funding should not be cause to deny benefits. (Doc. 16 at 7). In reviewing the record, however, the Court must work with the medical evidence before it, despite a plaintiff's claims that he or she was unable to afford medical treatment *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir.1987).

ailments. However, the treatment notes indicate that Plaintiff was generally treated conservatively and discharged the same day. Accordingly, there is no objective medical evidence in the record sufficient to overturn the Commissioner's determination that those impairments did not significantly limit her ability to perform basic work activities at any time through the date of the ALJ's decision.

*2. Credibility Assessment and Evaluation of Pain*

Plaintiff's second assignment of error asserts that the ALJ did not adequately consider her pain and credibility. Specifically, Plaintiff contends the ALJ failed to evaluate her credibility in accordance with 20 C.F.R. § 404.1529. Plaintiff's assertions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers* v. *Comm'r of Social Sec*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. §404.1529(c)(3)).[3]

---

[3] The regulations provide that the ALJ's credibility decision must include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the

11

At the administrative hearing, Plaintiff testified that she is unable to work because her back and knee were "messed up," she had difficulty using her hands and her memory was poor. (Tr. 30). Specifically, Plaintiff alleged that she has suffered from chronic back pain since she was involved in a car accident in 1989. (Tr. 33). She testified that she injured her knee in 2007 after falling on her boyfriend's boat. (Tr. 38). She further testified that she often dropped things and fell down frequently. (Tr. 34-37). She also suffered from liver problems since 2001, which cause her to "throw up every morning." (Tr. 38). Plaintiff also testified that she used to have a drinking problem, but now only drinks "every once in a great while." (Tr. 44-45).

The ALJ 's decision indicates that he carefully considered Plaintiff's testimony and complaints of disabling pain, and properly found that there was no objective evidence to support Plaintiff's allegations. *Walters*, 127 F.3d at 531. As detailed above, there is simply no objective evidence to support Plaintiff's testimony of a severe impairment during the relevant period. *See Thoroughman v. Chater*, 91 F.3d 144, 1996 WL 316518, at *1 (6th Cir. 1996) (As the ALJ cited to the fact that there is no objective medical evidence to support plaintiff's complaints of disabling pain, the ALJ's credibility determination was proper).[4]

---

symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

[4] The Commissioner asserts that the factors set forth in C.F.R. §§ 404.1529(c) and 416.929(c) are to be considered only after the ALJ determine that "the medical signs and laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain . . ." *See* 20 C.F.R. § 404.1529(c). In this case, there were

12

Furthermore, despite Plaintiff's assertion to the contrary, the ALJ properly considered the regulatory factors in evaluating her credibility and complaints of disabling pain. For example, the ALJ noted that Plaintiff had received minimal treatment during the relevant period. (Tr. 15). The ALJ further found that Plaintiff had a sporadic work history, which primarily occurred after her alleged disability onset date, which suggested that her motivation to work was low. (Tr. 15). The ALJ also determined that Plaintiff made inconsistent statements relating to her use of alcohol. (Tr. 17). As noted above, Plaintiff testified that she drank alcohol "every once in a great while." (Tr. 45). However, the record indicates that Plaintiff reported drinking 2-6 beers as well as rum and coke on a daily basis, and emergency room treatment notes indicate that Plaintiff smelled of alcohol upon arrival. (Tr. 205, 248, 250). The ALJ determined that Plaintiff's continued use of alcohol "shows noncompliance as any amount of alcohol would be prohibitive if she actually has liver disease as she has alleged." (Tr. 17). The ALJ noted that the evidence suggests that alcohol is more of a problem than Plaintiff's admits, but found there was insufficient evidence to establish a severe psychological or mental impairment relating her alcohol consumption. The ALJ's findings were made in accordance with agency regulations and are substantially supported by the record. Accordingly, the undersigned finds the ALJ's opinion reflects a comprehensive examination of the record and properly follows the pertinent law and regulations.

---

no medical signs and laboratory findings establishing a severe medical condition. As such, the Commissioner asserts that the ALJ was not required to evaluate the credibility of Plaintiff's complaints under the agency regulations. Notwithstanding this assertion, the undersigned finds that the ALJ's properly evaluated Plaintiff's pain, credibility and subjective complaints in determining that Plaintiff did not suffer from a severe medical impairment.

13

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                               _s/Stephanie K. Bowman_
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BETH MCDANIEL,                                              Case No. 1:10-cv-699

    Plaintiff,                                          Beckwith, J.
                                                                                            Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).